SAGE CLUB, INC., Appellant
(Petitioner),

v.

EMPLOYMENT SECURITY COMMIS-
SION OF WYOMING and Dorothy Alm
Dartez, Appellees (Respondents).

No. 5126.

Supreme Court of Wyoming.

Oct. 31, 1979.

Claude W. Martin, Casper, for appellant.

John D. Troughton, Atty. Gen., Bernard
L. Broderick (argued), Asst. Atty. Gen. and
Renee Magee, Legal Intern, on brief for
appellees.

Before RAPER, C. J., and McCLINTOCK, THOMAS, ROSE and ROONEY, JJ.

RAPER, Chief Justice.

The petitioner-appellant, Sage Club, Inc., seeks review of an order of the district court which affirmed a determination of the Employment Security Commission (E.S.C.) that the respondent-appellee, Dorothy Alm Dartez, left her employment with the appellant for "good cause" and was therefore entitled to unemployment benefits.[1] Appellant asserts that appellee left her work without "good cause"[2] and therefore is not entitled to the unemployment benefits. Appellant further asserts that the district court failed to employ the proper standards in its review of its petition.

We will reverse the order of the district court with directions to vacate its order and enter one reversing the determination of the Employment Security Commission.

On April 4, 1977, John "Butch" Lewis became a part-owner and operator of the appellant, Sage Club, Inc., a bar. When Lewis took over the management, the appellee had been working as the day bartender there for about a year. Lewis continued her in that position; however, he did alter somewhat the tasks she was to perform. In addition to her customary duties, Lewis directed that appellee slice limes to use in mixed drinks for the night shift and to order certain supplies (candy, gum, chips, paper napkins, coasters, janitorial supplies, etc.) when a salesperson called once a week. The slicing of limes took several minutes a day and the ordering of supplies took several minutes a week. Both of these additional tasks were performed during the usual eight hours of the daytime shift. In addition, Lewis instituted a new system of keeping "a bank" which was essentially only a means of better keeping track of money receipts. Appellee complained about these new responsibilities but accepted them on the understanding that they would be temporary. Appellee did ask to be placed on a night shift so as to avoid the new responsibilities she was encountering on the day shift. This could not be worked out. Appellee was given two raises—first, from $40.00 to $42.60, and then to $45.00 per shift. Appellee claimed these were only normal raises and adjustments in union scale wages and did not take into account the "extra" work she had to do during the day shift. Lewis would not relieve her of these additional duties nor would he raise her pay in recognition of these additional duties beyond the raises she had already received. The wage paid to appellee was equal to or greater than any other employee who performed similar tasks. Eventually, appellee gave a two-week notice that she was quitting. Lewis immediately hired a new bartender to take appellee's place and told appellee that her services would no longer be required. Appellee applied for unemployment compensation. An initial deputy's recommendation awarded appellee unemployment benefits. The appellant protested and a hearing was held which brought out the facts described above.

On November 15, 1977, the appeals examiner of the E.S.C. found that the appellee " * * * did not voluntarily quit work without good cause and she is, therefore, not subject to disqualification," and the award of benefits was upheld. Appellant then appealed to the E.S.C. and, on December 22, 1977, it affirmed the determination of the appeals examiner. On January 20, 1978, appellant filed a petition for review in the district court. The appellant sought review in accordance with the Wyoming Administrative Procedure Act (W.A.P.A.), § 9–4–101, et seq., W.S.1977, and Rule 72.1, Wyoming Rules of Civil Procedure. In this

---

1. Sections 27–3–101 through 27–3–121, W.S. 1977, provide for unemployment compensation for those "involuntarily" unemployed. § 27–3–101(a), W.S.1977.

2. "§ 27–3–106. Disqualifications for benefits. "(a) Leaving work without good cause; * * * An individual shall be disqualified for a period of eight (8) calendar weeks, and shall forfeit benefit entitlement equal to eight (8) times his full weekly benefit amount commencing with the effective date of an otherwise valid claim if the commission finds that he has left his most recent work voluntarily without good cause." (Emphasis added.)

appeal, he also asserts that the review should be so governed. The E.S.C. also relied upon those statutes and rules but also directed the court's attention to § 27–3–107(d)(vii), W.S.1977. Both parties filed briefs in the district court. On February 9, 1979, the district court issued a decision letter which in pertinent part read:

"Had I been the person charged with making the initial determination here, I might have reached a conclusion opposite that arrived at by the agency and its officers. The Court is, however, in a different posture and if it is to do anything other than affirm the agency action, must make a determination with burden of proof on the petitioner, that the agency acted unlawfully in some respect outlined in the several subparagraphs of WS 9–4–114(c). This the Court cannot do. Case law concerning what constitutes good cause is in conflict, with at least some cases saying that circumstances no more substantial than what appears here support similar agency determination. I cannot say that there was not substantial evidence supporting the determination as the agency made it, and it is under this subsection that the case comes closest to reversibility."

In accordance with this decision letter, an order affirming the determination of the E.S.C. was entered February 27, 1979.

█ The Unemployment Compensation statute sets out an elaborate scheme providing for judicial review. We agree with the appellant that the proceedings for judicial review of final determinations made by the E.S.C. are governed by the W.A.P.A., supra, and Rule 72.1, W.R.C.P.[3] The W.A.P.A., which governs procedures in the administrative setting, defines agency in § 9–4–101(a)(i), supra:

"(i) 'Agency' means any authority, bureau, board, *commission*, department, division, officer or employee of the state, a county, city or town or other political subdivision of the state, except the gov-

erning body of a city or town when acting in a legislative capacity, or when hearing appeals from hearings held in accordance with the Wyoming Administrative Procedure Act * * *, the state legislature and the judiciary;" (Emphasis added.)

Clearly the E.S.C. is encompassed within this term. Its decisions are subject to the same standards of review as apply to all other state agencies.

The readily apparent purpose of the W.A.P.A. was to provide uniform procedures to be followed in the adoption of rules and in conducting contested hearings. In addition, the W.A.P.A. sets out the means by which a final agency determination may be appealed to the courts for review. While the statutes which govern the activities of the E.S.C. are extraordinarily detailed in setting out the rules which govern that agency's operations and also set out in detail the procedures for conducting hearings in contested cases, as well as providing a specific procedure for judicial review of final agency determinations, the E.S.C. is not immune from the terms of the W.A.P.A.

Section 9–4–114, W.S.1977, and Rule 72.1, W.R.C.P., govern the mode of judicial review of administrative determinations. Section 17, ch. 108, S.L.Wyo.1965, reads:

"All acts or parts of acts which are inconsistent with the provisions of this Act are hereby repealed, but this repeal does not affect pending proceedings. Provided, however, to the extent not inconsistent herewith existing procedures provided for by statute shall be deemed preserved and the procedures provided for by this Act shall be in addition and supplementary thereto."

And § 18, ch. 108, S.L.Wyo.1965, reads:

"This Act takes effect January 1, 1966, and (except as to proceedings then pending) applies to all agencies and agency proceedings not expressly exempted."

We hold that the E.S.C. is not exempted from the terms of the W.A.P.A., and to the

---

**3.** Rule 72.1, W.R.C.P., was in force at the time this case had its genesis. That rule is now found in the Wyoming Rules of Appellate Pro-

cedure as Rule 12, in essentially the same form as it appeared in Rule 72.1, supra.

extent the provisions of § 27–3–107, supra, are inconsistent with the W.A.P.A., they are superseded.

The provision of § 27–3–107(d)(vii)(a)(II), W.S.1977, concerning judicial review states:

"(II) In any proceeding under this subsection, the findings of the commission as to the facts, if supported by substantial evidence and in the absence of fraud, shall be conclusive and the jurisdiction of said court shall be confined to question of law. * * *"

The foregoing appears to have been last included in an amendment and reenactment of the Wyoming Employment Security Law by § 8, ch. 121, S.L.Wyo.1963, so it preceded the W.A.P.A. The statement is not completely in harmony with the intent of the legislature to provide a uniform standard of judicial review for administrative determinations. Rule 12.03, WRAP. The proper standard of review to be followed by both the district court and the supreme court is that found in § 9–4–114, W.S.1977:

"(a) Subject to the requirement that administrative remedies be exhausted and in the absence of any statutory or common-law provision precluding or limiting judicial review, any person aggrieved or adversely affected in fact by a final decision of an agency in a contested case, or by other agency action or inaction, or any person affected in fact by a rule adopted by an agency, is entitled to judicial review in the district court for the county in which such administrative action or inaction was taken, or in which any real property affected by such administrative action or inaction is located, or in the event no real property is involved, in the district court for the county in which the party aggrieved or adversely affected by the administrative action or inaction resides or has its principal place of business. The procedure to be followed in such proceeding before the district court shall be in accordance with rules heretofore or hereinafter adopted by the Wyoming supreme court.

"(b) The supreme court's authority to adopt rules governing review from agencies to the district courts shall include but not be limited to authority to determine the content of the record upon review; the pleadings to be filed; the time and manner for filing the pleadings, records and other documents; and the extent to which supplemental testimony and evidence may be taken or considered by the district court. The rules adopted by the supreme court under this provision may supersede existing statutory provisions.

"(c) The court's review pursuant to the provisions of this section shall be limited to a determination that:

"(i) The agency acted without or in excess of its powers;

"(ii) The decision or other agency action was procured by fraud;

"(iii) The decision or other agency action is in conformity with law;

"(iv) The findings of facts in issue in a contested case are supported by substantial evidence; and

"(v) The decision or other agency action is arbitrary, capricious or characterized by abuse of discretion." [4]

4. Subsection (c) of § 9–4–114, W.S.1977, was amended effective May 25, 1979, well after this matter was appealed to the district court. Thus the old wording of § 9–4–114(c) governs our review in this case. The new wording is:

"(c) To the extent necessary to make a decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or the applicability of the terms of an agency action. In making the following determinations, the court shall review the whole record or those parts of it cited by a party and due account shall be taken of the rule of prejudicial error. The reviewing court shall:

"(i) Compel agency action unlawfully withheld or unreasonably delayed; and

"(ii) Hold unlawful and set aside agency action, findings and conclusions found to be:

"(A) Arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law;

"(B) Contrary to constitutional right, power, privilege or immunity;

"(C) In excess of statutory jurisdiction, authority or limitations, or lacking statutory right;

It is apparent that the district court did conduct its review in accordance with § 9–4–114, supra. This court must review the decision of the district court and the E.S.C. in the exact same light. We hold that the district court erred in affirming the determination of the E.S.C. on the ground that it was not supported by substantial evidence and that the determination to award benefits to the appellee was arbitrary, capricious, and characterized by an abuse of discretion.

Courts will not substitute their judgment for that of a particular board or commission, but its decision must be supported by substantial evidence. In the absence of substantial evidence to support a decision, there is an error of law. *Shenefield v. Sheridan County School District No. 1*, Wyo.1976, 544 P.2d 870. However, it is plain that the evidence presented below will support but *one* conclusion and that is that the appellee left her employment "voluntarily without good cause." There is no dispute about the facts forming the reason why the employee quit her employment. A choice of options is not involved. The problem is whether or not the evidence present will support "good cause." Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Howard v. Lindmier*, 1950, 67 Wyo. 78, 214 P.2d 737, 740. There is no evidence present which would support a conclusion of "good cause," as a matter of law. Section 27–3–106(a), supra. To constitute "good cause" the evidence presented must demonstrate:

"* * * such a cause as justifies an employee's voluntarily leaving the ranks of the employed and joining the ranks of the unemployed; the quitting must be for such a cause as would reasonably motivate in a similar situation the average able-bodied and qualified worker to give up his or her employment with its certain wage rewards in order to enter the ranks of the compensated unemployed. The

terms 'good cause' and 'personal reasons' connote, as minimum requirements, real circumstances, substantial reasons, objective conditions, palpable forces that operate to produce correlative results; adequate excuses that will bear the test of reason; just grounds for action. * * "

81 C.J.S. Social Security and Public Welfare § 226a, pp. 448–452; *Erie Resistor Corporation v. Unemployment Compensation Board of Review*, 1953, 172 Pa.Super. 430, 94 A.2d 367, 369; 18A Words and Phrases, 'Good Cause,' pp. 58–64 (1956) (1979 Pocket Part, pp. 20–23).

The law requires that an employee who voluntarily quits work without good cause be disqualified from benefits. It is a question of statutory construction and a question of law what the statutory language "good cause" means. *McPherson v. Employment Division*, 1979, 285 Or. 541, 591 P.2d 1381, 1385. Without belaboring the point unduly, the evidence relied on by the appellee and which the E.S.C. determined to be "good cause" for voluntarily leaving employment does not even come close to constituting "good cause." It is inadequate, if not whimsical, on its face; and no explanation is required to flesh out these observations. As a general rule, customary working conditions not involving deceit or wrongful conduct on the part of the employer are not a sufficient reason for an employee voluntarily to leave work. 81 C.J.S. Social Security and Public Welfare § 233; and see generally, West's Digest System, Social Security and Public Welfare, These are minor and incidental duties wholly consistent with appellee's performing a day's work for a day's wages. If such trivial changes in an employee's work routine could constitute "good cause" to quit work and collect unemployment benefits, then no employer would be safe in altering an employee's work routine even in the most insignificant way.

"(D) Without observance of procedure required by law; or

"(E) Unsupported by substantial evidence in a case reviewed on the record of agency hearing provided by statute."

After citing extensive authority, the court in *Custom Meat Packing Company v. Martin*, 1963, 85 Idaho 374, 379 P.2d 664, 671, appropriately observed from its precedent, that the law enjoins the employment security agency with the duty of safeguarding the employment security fund from the claims of unworthy and ineligible claimants so that funds will be available for the relief and benefit of those whom the law seeks to protect, and that an employer should not be charged on its account for benefit payments to any of his employees who voluntarily quit without cause.

The order of the district court is reversed and vacated and the matter is remanded to the district court for entry of an order reversing the determination of the E.S.C. consistent with this opinion.