**Jim L. ROBERTS, Petitioner,**

v.

**EMPLOYMENT SECURITY COMMISSION OF WYOMING, Respondent.**

**No. 87–176.**

Supreme Court of Wyoming.

Nov. 30, 1987.

Richard Mathey of Reese & Mathey, Green River, for petitioner.

Joe Scott, Sp. Asst. Atty. Gen., Casper, for respondent.

Before BROWN, C.J., and THOMAS, CARDINE, URBIGKIT and MACY, JJ.

BROWN, Chief Justice.

This is an appeal from the final administrative decision of the Wyoming Employment Security Commission (ESC) denying appellant unemployment benefits. The case was certified to this court on July 8, 1987, by the District Court of the Third Judicial District pursuant to Rule 12.09, Wyoming Rules of Appellate Procedure. Appellant raises two issues:

"1. Whether the findings and conclusions made by the hearing examiner of the Employment Security Commission were supported by substantial evidence.

"2. Whether the findings and conclusions of the hearing examiner were arbitrary."

We will affirm on the first issue, and decline review on the second issue because it was not properly preserved for appeal.

Appellant Jim L. Roberts, was employed by Brown and Root Construction Company at Battle Mountain, Nevada, in June 1986. On August 20, 1986, Roberts showed up for work on schedule at 4:00 a.m. and worked until 8:00 or 9:00 a.m. At that time he went to the site office for a cup of coffee, and was confronted by the job superintendent. The superintendent told Roberts that his breath smelled of alcohol and that he could be "written up" for it. Roberts testified in a later ESC hearing that he responded to the superintendent by stating:

"That's fine. * * * Just go ahead and write me up. I'm going to the house now if that's the way you feel."

Roberts then went outside, told the job foreman that he, as well as the superintendent, could write Roberts up, and then Roberts left the job site and went home.

Roberts returned to work at Battle Mountain the next morning, but was told to leave because his job had been terminated. He then returned to Wyoming and filed a claim for unemployment benefits on September 3, 1986. This initial claim was denied on September 24, 1986, due to "non-fraudulent misrepresentation." Roberts was allowed to refile his claim on September 26, 1986. On October 24, 1986, the ESC issued a Notice of Misconduct Disqualification denying Roberts benefits for the loss of his job with Brown and Root. Roberts objected to this disqualification and was granted a telephone hearing on the matter before an ESC hearing examiner. Timely notice of this hearing was mailed to Roberts on November 3, 1986.

During the November 12, 1986, telephone hearing, Roberts and his wife, Marjorie Roberts, testified. Roberts testified that he had been drinking until around 2:00 a.m. just before he went to work the day he was terminated. He also admitted leaving the job on the morning he was terminated.

The ESC hearing examiner issued his decision including findings of fact and conclusions of law, on November 13, 1986.

This decision also denied Roberts benefits. Roberts appealed this decision to the ESC. The appeal was timely considered by the Commission. It incorporated the hearing examiner's findings and conclusions and summarily affirmed the denial of benefits on December 22, 1986.

Roberts then filed a Petition for Review in the district court on January 30, 1987. The district court ordered briefs and, on its own motion, certified the case to this court under Rule 12.09, W.R.A.P.

Roberts first contends that the ESC hearing examiner finding of work connected misconduct was not supported by substantial evidence and should be reversed by this court under § 16–3–114(c)(ii)(E), W.S. 1977 (October 1982 Replacement).[1] Substantial evidence is defined as

" * * * relevant evidence which a reasonable mind might accept in support of the conclusions of the agency. It is more than a scintilla of evidence." *Trout v. Wyoming Oil and Gas Conservation Commission,* Wyo., 721 P.2d 1047, 1050 (1986).

■ When reviewing final agency action on a substantial evidence challenge, we will not substitute our judgment for that of the agency. *Grams v. Environmental Quality Council,* Wyo., 730 P.2d 784, 786 (1986). Instead, we examine the entire record on appeal to determine if the agency reasonably could have concluded as it did based on all of the conflicting evidence before it. *Trout v. Wyoming Oil and Gas Conservation Commission,* supra. If this review reveals substantial evidence to support the agency action, we will uphold the agency decision on appeal. *Id.* The burden is on the petitioner to prove that the agency concluded as it did without substantial evidence to support its decision, and that such error is prejudicial to his case. *Grams v. Environmental Quality Council,* supra, at 786, 790; § 16–3–114(c).

■ A person can be disqualified to receive unemployment benefits in Wyoming under § 27–3–311(c), W.S.1977 (June 1987 Replacement)[2] when he is discharged from employment as a result of work related "misconduct". In this case, the Commission found that:

"Prior precedent decisions of the Employment Security Commission and of the Appeals Examiner have consistently held that if a claimant has been discharged from his employment because of carelessness, misbehavior, or negligence which shows an intentional disregard of the employers interest, he was discharged because of misconduct in connection with his work.

"The term 'misconduct' is not used ordinarily in a criminal sense, but more in the industrial sense. Employees maybe discharged for any of numerous acts which would be construed to mean misconduct in connection with work, a few of which are listed as follows: Failure to carry out instructions of the employer, violation of company rules, disregard of warnings for misbehavior, *absence from work without permission,* habitual tardiness, quarreling or fighting with other employees, insubordination, intoxication on the job, and many others." (Emphasis added.)

This court recently affirmed another ESC disqualification for misconduct based on

---

1. Section 16–3–114(c)(ii)(E) provides:
   "(c) To the extent necessary to make a decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. In making the following determinations, the court shall review the whole record or those parts of it cited by a party and due account shall be taken of the rule of prejudicial error. The reviewing court shall:
   " * * *

   "(ii) Hold unlawful and set aside agency action, findings and conclusions found to be:
   " * * *
   "(E) Unsupported by substantial evidence in a case reviewed on the record of an agency hearing provided by statute."

2. Section 27–3–311(c) provides:
   "(c) An individual shall be disqualified from benefit entitlement and shall forfeit all accrued benefits if he was discharged from his most recent work for misconduct connected with his work, fraud or receipt of disqualifying income."

the definition for "misconduct" used by the ESC and other jurisdictions which states:

"Misconduct under the Wyoming Employment Security Law means generally an act of an employee which indicates a disregard of (1) the employer's interests or (2) the commonly accepted duties, obligations and responsibility of an employee. This would include carelessness or negligence of such degree or recurrence as to reveal willful intent or an intentional disregard of the employer's interests of the employee's duties and obligations to his employer. Inefficiency or failure in good performance as the result of inability or incapacity; ordinary negligence in isolated instances or good faith errors in judgment or discretion are not deemed to be misconduct within the meaning of the Law." *Safety Medical Services, Inc. v. Employment Security Commission,* Wyo., 724 P.2d 468, 472 (1986).

Based on the ESC findings and applying the ESC definition of misconduct to the facts of this case, there is no doubt that the ESC reasonably could have concluded that Roberts committed misconduct which would deny him unemployment benefits. The ESC specifically found that:

"The claimant was employed by Brown & Root as a mechanic/maintenance man at Battle Mountain, Nevada from June 1986 to August 20, 1986, at which time he was dismissed.

"On the claimant's last day of work, he was confronted by a supervisor. This supervisor indicated that he would write the claimant up because he could smell alcohol on the claimant's breath. At that point, the claimant indicated that he didn't need the write up but he would go to the house.

"At that point, the claimant left the work site and returned on the following day. When the claimant returned for work, he was informed that his employment had been terminated.

"In response to questions from this examiner, the claimant indicated that on the last day of work he was to report at 4:00 a.m. The claimant testified that he was on time for work. In response to additional questions from the examiner, it was determined that the claimant had his last drink between 1:30 a.m. and 2:00 a.m. of the same day."

Based on these findings the ESC concluded that:

"A precedent decision by an Examiner for the Employment Security Commission has previously held that when an individual voluntarily embarks upon a course of events which ultimately results in the termination of that individual's employment, such action constitutes misconduct connected with the work.

"In this matter, the claimant admitted that he had been drinking up to two hours prior to his scheduled work time. The claimant was sent home for having alcohol on his breath. The actions causing the claimant's separation were initiated by the claimant. Such action constitutes misconduct connected with his work and he is, therefore, subject to disqualification."

Both the findings and conclusions are based on Roberts' own admissions during the telephone hearing.

While showing up for work on one occasion with little rest after a night at the bar might not in itself constitute misconduct, walking off the job after being confronted by a senior employee about the effects of such behavior is misconduct in this context. Other jurisdictions with very similar regulatory definitions of misconduct also hold to this legal conclusion. *See Herreid v. Moore Data Management Services,* Minn. App., 392 N.W.2d 613, 614 (1986); *Colburn v. Pine Portage Madden Brothers, Inc.,* Minn., 346 N.W.2d 159, 160 (1984); *DiGeronimo v. Ross,* 53 A.D.2d 797, 385 N.Y.S.2d 172, 173, (N.Y.App.Div.1976); *Simmons v. Commonwealth Unemployment Compensation Board of Review,* 59 Pa.Cmwlth. 174, 429 A.2d 121, 122 (1981).

The only relevant ESC conclusion for which substantial evidence may not have existed was that Roberts was "sent home for having alcohol on his breath." Roberts was merely told that he smelled of alcohol, and then he walked off the job. This error

in the ESC conclusions is not prejudicial under our standard of review. Section 16–3–114(c). Further, the ESC findings state that Roberts freely admitted he walked off the job after his confrontation with the superintendent.

We hold that there was substantial evidence for the ESC to reasonably conclude that Roberts committed misconduct that could result in denial of unemployment benefits.

■ Concerning Roberts' second contention that the ESC findings and conclusions were arbitrary in that the hearing was somehow inadequate, we agree with the ESC that this objection was not properly preserved for appeal. There is no record of Roberts ever questioning the adequacy of the hearing or the quality of the information used during the administrative appeals process. Issues not raised before the agency cannot be considered initially on appeal. *Trout v. Wyoming Oil and Gas Conservation Commission,* supra, at 1053–1054.

Affirmed.