**SOUTHWEST WYOMING REHABILITA-TION CENTER, a Non–Profit Wyoming Corporation, Appellant (Petitioner),**

v.

**EMPLOYMENT SECURITY COMMIS-SION OF WYOMING, Appellee (Respondent).**

No. 89–85.

Supreme Court of Wyoming.

Oct. 27, 1989.

John W. James of James and James, Rock Springs, for appellant.

William G. Hibbler, Sp. Asst. Atty. Gen., Casper, for appellee.

Before CARDINE, C.J., and THOMAS, URBIGKIT, MACY and GOLDEN, JJ.

URBIGKIT, Justice.

Appellant, Southwest Wyoming Rehabilitation Center, seeks reversal of a decision by the Employment Security Commission of Wyoming (ESC) allowing unemployment benefits to four of appellant's former employees. Those employees voluntarily quit pursuant to their settlement agreement arising from a federal civil rights lawsuit against appellant. The ESC determined their resignations, having been submitted for good cause associated with the employment, did not disqualify them from receiving benefits. Upon appellant's petition for review, the district court affirmed the ESC decision. Appellant now asks us to answer the following question in the negative:

Whether the decision of the Employment Security Commission, upholding an award of unemployment insurance benefits to the claimants, was supported by substantial evidence or in accordance with law?

We affirm.

Jan Rae Frady, Virginia Lee McCann, Valerie J. Prazma and Denis D. Carlson initiated a lawsuit against appellant in the United States District Court to "redress injuries done to them by the Defendants resulting in deprivation of rights, privileges and immunities guaranteed them by the Constitution and laws of the United States of America pursuant to 42 U.S.C. §§ 1983, 1985, and 1986 and the First, Fifth and Fourteenth Amendments to the United States Constitution." Appellant had allegedly harassed those employees in retaliation for their support of a former co-employee following discharge and his subsequent proceedings before the ESC, wherein he successfully sought unemployment ben-efits. The parties settled the lawsuit by agreement for each litigant to accept $10,-000 and then voluntarily resign from appellant's employment. Following their respective resignations, each of the employees applied for unemployment compensation.

Appellant objected to those benefit claims, asserting the employees should be disqualified because they had voluntarily resigned without any express or constructive inducement or coercion by appellant. Appellant also stated:

The Employee filed a lawsuit in the Federal District Court *over the same issues contained in her petition for unemployment compensation.* That lawsuit was settled and part of the consideration for sums of money received by the Employee at the conclusion of the lawsuit was the voluntary resignation of the Employee from employment with the Employer. Therefore, the Employee would be unjustly enriched by receiving unemployment benefits at this time since the sums of money received in the lawsuit represented compensation in full to the Employee.

(Emphasis added.) As an alternative to these arguments, appellant implied benefits should be denied based on the employees' poor work performance.[1]

The ESC initially concluded, in four separate decisions, that appellant failed to establish any misconduct by the employees. It also determined the resignations, having been prompted by a settlement agreement, would not disqualify the employees' claims. Appellant pursued administrative review, bringing the four cases before an Appeals Examiner for consideration. By the parties' agreement, no testimony was presented. The Appeals Examiner's decision of September 2, 1988 consequently rested solely on the written administrative record

---

1. The grounds advanced by appellant for disqualifying its employees from benefits may be found in W.S. 27-3-311, which states in pertinent part:

(a) An individual shall be disqualified from benefit entitlement * * *, if the commission finds that he:

(i) Left his most recent work voluntarily without good cause attributable directly to his employment, except for bona fide medical reasons;

\* \* \* \* \* \*

(c) An individual shall be disqualified from benefit entitlement and shall forfeit all accrued benefits if he was discharged from his most recent work for misconduct connected with his work, * * *.

and certain documents admitted into evidence by stipulation. The Appeals Examiner affirmed the award of benefits to the employees, reasoning:

> In this matter, the employer was the moving force in the separation in that the release and full settlement was contingent upon the individual's resignation from employment. Resignation resulted from the action of the employer. The claimant did voluntarily terminate employment, however, she did so for cause associated with the work and she is, therefore, not subject to disqualification.

After further ESC administrative appeal, resulting in the agency's affirmation of the Appeals Examiner's decision, appellant petitioned for judicial review. The reviewing court issued a decision letter in the consolidated cases on February 21, 1989, noting:

> The essential facts of these cases are not in dispute and, therefore, will not be restated here. The question to be reviewed is whether the Hearing Examiner and the Employment Security Commission properly applied the law to the issue of whether the four former employees of Petitioner were entitled to unemployment benefits following their voluntary resignations.

> *     *     *     *     *     *

> There is no question that claimants resigned voluntarily so the question is whether, or not, they had *"good cause attributable directly to his (their) employment."* It should be obvious that after having filed a lawsuit against Petitioner for conditions of employment and having failed in attempts to get their superiors terminated, the claimants were not wanted employees. * * * The claimants, therefore, did have *"good cause."*

(Emphasis in original.) The reviewing court concluded the administrative decision was "not arbitrary, capricious, nor contrary to law, and [was] * * * supported by substantial evidence" and, accordingly, by order of March 9, 1989, affirmed that decision.

■■ On appeal from a district court's consideration of an agency action, this court is not bound by the conclusions of the reviewing court. Rather, using the same evidentiary materials and the same review standards as the district court, we conduct an independent inquiry into the matter, just as if it had proceeded directly to us from the agency. *Employment Sec. Com'n of Wyoming v. Bryant,* 704 P.2d 1311, 1314 (Wyo.1985); *Matter of North Laramie Land Co.,* 605 P.2d 367, 373 (Wyo.1980). That is, we apply the standard set out in W.S. 16-3-114(c). See *Bryant,* 704 P.2d at 1314 and *Board of Trustees of School Dist. No. 4, Big Horn County v. Colwell,* 611 P.2d 427, 428-29 (Wyo.1980). W.S. 16-3-114(c) states:

> To the extent necessary to make a decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. In making the following determinations, the court shall review the whole record or those parts of it cited by a party and due account shall be taken of the rule of prejudicial error. The reviewing court shall:

> (i) Compel agency action unlawfully withheld or unreasonably delayed; and

> (ii) Hold unlawful and set aside agency action, findings and conclusions found to be:

>> (A) Arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law;

>> (B) Contrary to constitutional right, power, privilege or immunity;

>> (C) In excess of statutory jurisdiction, authority or limitations or lacking statutory right;

>> (D) Without observance of procedure required by law; or

>> (E) Unsupported by substantial evidence in a case reviewed on the record of an agency hearing provided by statute.

In the present case, appellant contends the decision of the ESC was contrary to law and unsupported by substantial evidence. We do not agree.

The district court correctly noted that this case raises a single question: whether

the voluntary resignation of appellant's employees was with "good cause." In turn, that question involves both an inquiry into the meaning of the statutory phrase and an inquiry into the evidentiary support for the designated meaning. The meaning of "good cause" in any particular factual context is a question of statutory construction, a question of law. *Sage Club, Inc. v. Employment Sec. Com'n of Wyoming*, 601 P.2d 1306, 1310 (Wyo.1979). We have held that "good cause" is such a cause that would justify an employee in voluntarily leaving his job to join the ranks of the unemployed. Consequently, a resignation must be due to such objective circumstances as would reasonably motivate an average able-bodied and qualified worker, exercising common sense and prudence, to abandon the certain remunerations of his wage for the lesser rewards of compensated unemployment. *Beddow v. Employment Sec. Com'n of Wyoming*, 718 P.2d 12, 14 (Wyo.1986); *Bryant*, 704 P.2d at 1315–17; *Scott v. Fagan*, 684 P.2d 805, 809 (Wyo.1984); *Sage Club, Inc.*, 601 P.2d at 1310. This test has been satisfied in the present case.

The record indicates a steady deterioration of the relationship between appellant and these four employees. After an earlier defeat in ESC proceedings by another former employee, appellant took certain actions against these claimants which they interpreted as retaliation for their support of their former co-employee. Bad blood fouled the employment atmosphere so completely on both sides that the four workers abandoned more usual avenues of redress and filed suit. Settlement of that lawsuit cost appellant $40,000, in return for which the employees agreed to resign., Regardless of which side suggested those resignations as part of the settlement, these circumstances could reasonably motivate the average prudent worker to leave his job and seek unemployment benefits while looking elsewhere for employment. Thus, the ESC correctly concluded that such circumstances fell within the definition of the statutory term "good cause" and its decision was, in that regard, in accordance with law. *Scott*, 684 P.2d 805.

The question remains, however, whether the existence of those circumstances related by the four employees, and therefore the actuality of their "good cause," was supported by substantial evidence. Substantial evidence is such relevant evidence as reasonable minds would accept as adequate to support a conclusion. *Beddow*, 718 P.2d at 14; *Bryant*, 704 P.2d at 1315; *Sage Club, Inc.*, 601 P.2d at 1310. In determining whether that quantum of evidence is present, we must review all the evidence on the record, both that which supports and that which conflicts with the agency's decision, and decide whether the agency could reasonably conclude as it did. *Roberts v. Employment Sec. Com'n of Wyoming*, 745 P.2d 1355, 1357 (Wyo.1987); *Spivey v. Lucky MC Uranium Corp.*, 636 P.2d 518, 522 (Wyo.1981); *Colwell*, 611 P.2d at 429. The standard requires more than a mere scintilla of evidence, more than a mere suspicion that a certain fact exists. However, once that measure of evidence has been found to exist, the possibility of drawing two inconsistent conclusions from a body of evidence does not prevent a finding that the conclusion drawn by the administrative agency was supported by substantial evidence. *Burlington Northern R. Co. v. Public Service Com'n of Wyoming*, 698 P.2d 1135, 1139 (Wyo.1985); *Board of Trustees, Laramie County School Dist. No. 1 v. Spiegel*, 549 P.2d 1161, 1178 (Wyo.1976). In fact, we have indicated we defer to the experience and expertise of the agency in its weighing of the evidence and will disturb its decisions only where it is clearly contrary to the overwhelming weight of the evidence on record. *Cody Gas Co. v. Public Service Com'n of Wyoming*, 748 P.2d 1144, 1146 (Wyo.1988); *Beddow*, 718 P.2d at 14. *See also Scott*, 684 P.2d at 809.

■ The record in the present case reveals something more than minimal evidence of the strife at appellant's place of business. We need not favor the explanations of one side over the other to reach that conclusion, but merely let the fact of those discordant explanations and the clear uncontested evidence of the lawsuit and its

outcome speak for themselves. Appellant does not suggest the evidence of conflict is insignificant. Nor does appellant offer proof, or even contend, that such conflict did not exist. The entire thrust of appellant's appellate argument is that, notwithstanding such conflict, the claimants failed to prove involuntariness of their resignations by substantial evidence. Resignation voluntariness is, however, irrelevant. The four employees acknowledged all along they had voluntarily quit. What was in issue is existence of good cause to do so. While the evidence of work place discord is somewhat less than conclusive as to both the source and the severity of the problem, that the problem existed is uncontested. Furthermore, although appellant disagreed with his employees as to the source of the work place difficulties, there is nothing within this record to indicate the discord was any less severe than the employees claimed. The conclusions of the ESC, that these employees had good cause to resign, is supported by substantial evidence.

The decision of the administrative agency and review concurrence of the district court is affirmed.

MACY, Justice, dissenting.

I dissent. The record of appeal merely contains allegations and conclusory statements that the employees were being harassed. This does not meet the substantial evidence test. An employee should not be able to file a lawsuit, settle, and then contend that there was good cause to quit because the lawsuit caused discord. While a reasonable worker may have resigned under the circumstances following the settlement negotiations, this Court should not consider the dissension caused by the lawsuit when utilizing the "good cause" test, because that application opens the door for abuse of the unemployment insurance system. Exclusive application of the test to events leading up to the lawsuit would prevent that abuse.