HOOSIER WIRE DIE, INC. *v.* REVIEW BOARD OF THE INDIANA EMPLOYMENT SECURITY DIVISION AND PHYLLIS A. SORG

[No. 2-877A348. Filed January 5, 1978.]

*Herbert C. Snyder, Lynn Brundage*, of Indianapolis, *Barnes, Hickam, Pantzer & Boyd*, of counsel, of Indianapolis, for appellant.

*Theodore L. Sendak*, Attorney General, *Wesley T. Wilson*, Deputy Attorney General, for appellee.

LOWDERMILK, J.—This case was transferred to this office from the Second District in order to help eliminate the disparity in caseloads among the Districts.

## STATEMENT OF THE CASE

Hoosier Wire Die, Inc. (Hoosier) seeks review of a decision of the Review Board (Review Board) of the Indiana Employment Security Division (the Division), in which it held that a retroactive payment of wages made by Hoosier to Phyllis A. Sorg (Sorg), as ordered by the National Labor Relations Board (NLRB), amounted to deductible income only in the week Sorg received the payment.

## STATEMENT OF THE FACTS

Hoosier is an Indiana corporation engaged in the manufacture and sale of wire dies and related products. Hoosier discharged employee Sorg. The NLRB ultimately ruled that Hoosier discharged Sorg because of her activities on behalf of a union which

was attempting to organize Hoosier's employees. The NLRB ordered Hoosier to "[o]ffer Phyllis Sorg immediate reinstatement to her former position . . . and make her whole for any loss of pay due to the violations against her. . . ." The NLRB computed back pay, on a quarterly basis, for the period beginning February 16, 1976, and ending December 6, 1977, based upon Sorg's rate of pay and the average number of hours worked during the period by other employees in the office where Sorg had worked. Hoosier tendered its check, dated March 8, 1976, payable to Sorg, in an amount based upon the computation made by the NLRB.

Sorg had collected unemployment compensation benefits from February 21, 1976, through December 4, 1976. On April 4, 1977, Hoosier notified the Division that Sorg had received a retroactive payment of wages for period for which Sorg had received un-employment compensation benefits. Hoosier requested that its experience account be relieved of the charges for the benefit overpayment, in accordance with the provisions of IC 1971, 22-4-13-1(d) (Burns Supp. 1977).

On April 15, 1977, a deputy of the Division found that Sorg had received an overpayment of benefits for the period of February 21, 1976, through December 4, 1976, and that Sorg owed a refund for those weeks. The referee, while officially affirming and modifying the decision of the deputy, held that Sorg received deductible income only within the calendar week during which she actually received the check from Hoosier:

> "FINDINGS AND CONCLUSIONS: The evidence in this case establishes that pursuant to a decision dated November 4, 1976, of an administrative law judge of the National Labor Relations Board the employer in this matter was ordered to make the claimant whole for any loss of pay due to the viola-tions against her in accordance with the formula setforth [sic] in *F. W. Woolworth Co.*, 90 NLRB 289, (1950), and *Isis Plumbing and Heating Company*, 138 NLRB 716, (1962).
>
> These cases make it necessary that the back pay be computed by a calendar quarter. The computed gross back pay is figured on the basis of what a claimant would earn at the employer dur-ing each calendar quarter during the back pay period. The back pay is not allocated to any week by week computation.

The evidence in this case establishes that on March 8, 1977, claimant received a lump sum wage payment without any specified week by week allocation. The evidence in this case establishes that the order of the administrative law judge does not specify the weeks for which the back pay is to be made. The evidence in this case establishes that the company's check did not allocate the back pay on a week by week basis.

It is provided in Chapter 5-2 of the Indiana Employment Security Act that awards by a National Labor Relations Board of back pay for loss of employment shall be deemed to constitute deductible income with respect to the week or weeks for which such payments are made: Provided, however, that if such payments made pursuant to the provisions of the National [Labor] Relations Act are not, by the terms of the order or agreement under which said payments are made, allocated to any designated week or weeks, then and in such cases such payments shall be considered as deductible income in and with respect to the week in which the same is actually paid.

Because the evidence in this case establishes that by the terms of the order of the administrative law judge dated November 4, 1976, the payments made pursuant to that order are not by that order allocated to any designated week or weeks it is concluded that the claimant had deductible income in and with respect to the week in which she received the payment which week ended March 12, 1977, in accordance with the UC benefit calendar.

DECISION: The deputy's determination is affirmed and modified to read that the claimant received deductible income only within and with respect to the calendar week ending March 12, 1977. If claimant was eligible for benefits during the week ending March 12, 1977, claimant would have received deductible income over her weekly benefit amount." (Our inserts)

On July 22, 1977, the Review Board adopted the findings and conclusions made by the referee and affirmed the decision of the referee.

### ISSUE

Did the Review Board err in affirming the referee's decision applying the retroactive payment of wages only to the week in which Sorg actually received the check?

## DISCUSSION AND DECISION

Hoosier argues that its retroactive payment of wages results in Sorg's having received an overpayment of unemployment compensation benefits. Hoosier asks the Division to relieve ▮ its experience account of the benefits charges resulting from such overpayment.

IC 1971, 22-4-13-1, *supra*, provides, in pertinent part:

"(b) Any individual who, for any reason other than misrepresentation or nondisclosure as specified in IC 22-4-13-1(a), has received any amount as benefits to which he is not entitled under this article or because of the subsequent receipt of income deductible from benefits which is allocable to the week or weeks for which such benefits were paid becomes not entitled to such benefits under this article shall be liable to repay such amounts to the director for the employment security fund or to have such amount deducted from any benefits otherwise payable to him under this article, within the three [3] year period following the date of payment to such individual of such amount, if the existence of such reason has become final by virtue of an unappealed determination of a deputy, or a decision of a referee, or the review board, or by a court of competent jurisdiction.

\* \* \*

(d) Where it is finally determined by a deputy, a referee, the review board, or a court of competent jurisdiction, that an individual has received benefits to which he is not entitled under this article, the board, or its representative, shall relieve the affected employer's experience account of any benefit charges directly resulting from such overpayment. Provided, however, an employer's experience account will not be relieved of the charges resulting from an overpayment of benefits which has been created by a retroactive payment by such employer directly or indirectly to the claimant for a period during which the claimant claimed and was paid benefits unless the employer reports such payment by the end of the calendar quarter following the calendar quarter in which the payment was made or unless and until the overpayment has been collected. . . ."

IC 1971, 22-4-5-2 (Burns Code Ed.) lists an award of ▮ back pay by the NLRB as an item constituting deductible income and continues, as follows:

"... Provided, however, That if such payments made pursuant to the provisions of the National Labor Relations Act ... are not, by the terms of the order or agreement under which said payments are made, allocated to any designated week or weeks, then, and in such cases, such payments shall be considered as deductible income in and with respect to the week in which the same is actually paid.

\* \* \*"

This provision is the basis of the dispute in the case at bar.

The Order entered November 4, 1976, by the Administrative Law Judge of the NLRB provided, in part, as follows:

"The Respondent Hoosier Wire Die, Inc., its officers, agents, successors and assigns, shall:

\* \* \*

2. Take the following affirmative action designed to effectuate the purposes and policies of the Act.

a. Offer Phyllis Sorg immediate reinstatement to her former position or, if that job no longer exists, to a substantially equivalent position, without prejudice to her seniority or other rights previously enjoyed, and make her whole for any loss of pay due to the violations against her in accordance with the manner set forth in the section of this Decision entitled 'The Remedy.'

b. Preserve and upon request make available to the Board or its agents, for examination and copying, all payroll records, social security payment records, timecards, personnel records and reports and all other records *necessary to analyze the amount of backpay due under terms of this Order.*" (Our emphasis)

The remedy portion of the Order included the following explanation:

"... Any backpay due is to be determined in accordance with the formula set forth in *F. W. Woolworth Company,* 90 NLRB 289, 1950, and *Isis Plumbing & Heating Co.,* 138 NLRB 716, 1962."

The findings of the referee, adopted by the Review Board, include the following statement: "The evidence in this case

establishes that the order of the administrative law judge does not specify the weeks for which the back pay is to be made."

Hoosier argues that this finding is incorrect. By its Order the NLRB ordered Hoosier to make Sorg whole for any loss of pay. Hoosier could comply with that Order only by paying Sorg the amount she would otherwise have earned from date of discharge to date of reinstatement, less interim earnings. With the same order, the NLRB required Hoosier to reinstate Sorg. Obviously, the date of reinstatement was not an ascertainable fact at the time the NLRB entered its Order. Additionally, the NLRB had not yet gained access to Hoosier's payroll records and could not state in its Order the amount of the award. For these reasons, the NLRB ordered Hoosier to make its records available so that the NLRB could make the necessary determinations as to dates and amount. Those determinating were later made by the Indianapolis office of the NLRB, utilizing the guidelines set forth in the Order and the records which Hoosier made available in compliance with the Order.

Hoosier's Exhibits two and three were a letter and computation prepared by the Indianapolis office of the NLRB. These exhibits were the product of the NLRB after Hoosier reinstated Sorg and after the NLRB gained access to Hoosier's records. They reveal the period for which back pay was due and also the amount of the back pay due.

Hoosier argues first that the Order itself satisfies IC 1971, 22-4-5-2, *supra*, by clarifying the period of back pay as the period from date of discharge to date of reinstatement. Hoosier further argues that reference can be made to the information contained in Hoosier's Exhibits two and three to ascertain the specific dates.

We hold that, because the information contained in the NLRB's letter and enclosure was provided by the local office of the NLRB in furtherance of, and as clearly commanded by, the Order entered by the NLRB on November 4, 1976, that information can properly be considered in determining whether or not the requirements of IC 1971, 22-4-5-2, *supra*, are satisfied.

The Review Board maintains that, because the NLRB computed the award of back pay on a quarterly basis, no allocation to designated weeks has been provided. The review Board contends that a designated amount must be assigned to a designed week before an award becomes deductible income for any week other than the week of receipt. Hoosier insists that, because the award of back pay was made for the period from February 16, 1976, through December 6, 1976, the award was allocated to designated weeks.

In the decision of *F. W. Woolworth Co.* (1950), 90 NLRB 289, 291-93, the NLRB established its method of computing back pay on a quarterly basis, and explained the reason for such a policy:

"Heretofore, in cases arising under Section 8(a)(3) of the Act, we have normally ordered that back pay be determined by computing the difference between (a) what the employee would have earned in the position which was discriminatorily terminated and (b) what he actually earned in other employment during the entire period commencing on the date of discrimination and ending with the date of offer of reinstatement. The cumulative experience of many years discloses that this form of remedial provision falls short of effectuating the basic purposes and policies of the Act. We have noted in numerous cases that employees, after having been unemployed for a lengthy period following their discriminatory discharges, have succeeded in obtaining employment at higher wages than they would have earned in their original employments. This, under the Board's previous form of back-pay order, resulted in the progressive reduction or complete liquidation of back pay due.

\* \* \*

The public interest in discouraging obstacles to industrial peace requires that *we seek to bring about, in unfair labor practice cases, 'a restoration of the situation, as nearly as possible, to that which would have obtained but for the illegal discrimination.'* In order that this end may be effectively accomplished through the medium of reinstatement coupled with back pay, we shall order, in the case before us and in future cases, that the loss of pay be computed on the basis of each separate calendar quarter or portion thereof during the period from the Respondent's discriminatory action to the date of proper offer of reinstatement. The quarterly periods, hereinafter

called 'quarters,' shall begin with the first day of January, April, July, and October. Loss of pay shall be determined by deducting from a sum equal to that which Helen Wells would normally have earned for each such quarter or portion thereof, her net earnings, if any, in other employment during that period. Earnings in one particular quarter shall have no effect upon the back-pay liability for any other quarter. (Our emphasis) (Footnotes omitted)

The excerpt quoted above reveals two significant facts for our consideration: (1) the NLRB's purpose in adopting a policy of computing back pay on a quarterly basis was to assure that an employee is placed, as nearly as possible, in the same situation he would have enjoyed but for the illegal discrimination; (2) this policy of the NLRB will result in a windfall to employees who are awarded back pay after having collected unemployment compensation benefits if the Review Board's construction of the statute is approved.

Unemployment compensation benefits are money payments payable to eligible individuals with respect to their unemployment. IC 1971, 22-4-2-1 (Burns Code Ed.) A valid claim can be made only by a person who is totally, partially, or part-totally unemployed. IC 1971, 22-4-2-22 (Burns Code Ed.) An individual is totally unemployed "in any week with respect to which no remuneration was payable to him for personal services." IC 1971, 22-4-3-1 (Burns Code Ed.) Partial unemployment results "when, because of lack of available work, he is working less than his normal customary full time hours for his regular employer and his remuneration is less than his weekly benefit amount in any calendar week. . . ." IC 1971, 22-4-3-2 (Burns Code Ed.) "Remuneration" includes payments made in lieu of compensation for services. IC 1971, 22-4-4-1 (Burns Code Ed.) "Wages" includes "any payments made by an employer to an employee or former employee, under order of the national labor relations board . . . as additional pay, back pay, or for loss of employment. . . ." IC 1971, 22-4-4-2 (Burns Supp. 1977) "Deductible income" means "income deductible from the weekly benefit amount of an individual in any week . . ." and includes awards made by the NLRB of back pay. IC 1971, 22-4-5-1

(Burns Code Ed.) "Any individual who, . . . because of the subsequent receipt of income deductible from benefits which is *allocable to the week or weeks for which such benefits were paid* becomes not entitled to such benefits under this article shall be liable to repay such amount. . . ." IC 1971, 22-4-13-1(b), *supra.* (Our emphasis)

The Division had before it evidence that Sorg collected benefits from February 21, 1976, through December 4, 1976, and that Sorg subsequently received wages for the period of February 16, 1976, through December 6, 1976, in the form of back pay ordered by the NLRB and computed in a manner to assure that Sorg was placed in the same situation that she would have enjoyed but for her discharge. Further, even if the Division had desired to allocate the award on a specific week by week basis, it could have ignored all references to amounts for profit sharing, bonuses, holiday pay, increases in pay, and interest, and have been left with the obvious conclusion that Sorg had received in excess of $100 per week in deductible income for the entire period during which her weekly benefit amount was $60.

The Review Board cites *Schenley Distillers, Inc. v. Review Board* (1953), 123 Ind. App. 508, 112 N.E.2d 299. Although certain comments made by Judge Achor in that opinion seemingly provide support for the Review Board's construction of IC 1971, 22-4-5-2, *supra*, we note that those comments are only dicta in that opinion; we are not constrained to agree with the dicta.

The Review Board's primary argument, however, is as follows:

"More controlling than any inference drawn from *Schenley* is the fact that the Employee in this case had received interim earnings which were deducted from the benefits payable to her and that those same earnings had also been deducted from the back pay received by her. To treat the back pay as deductible income would result in a double loss to the Employee and a double reimbursement of the Employer's experience account. Such injustice is unconscionable."

The basis for this argument escapes our understanding. The NLRB's computation reflects back pay both before and after deductions for interim earnings. The Division's exhibits disclose

that the Division maintains records which provide all necessary details concerning the interim earnings of the claimant, the benefits paid to the claimant, and the charges made to the employer's experience account. After the employee has been made whole by the receipt of back pay, certainly the Division may resort to its records to determine the amount to be repaid and the proper credit to be made to the employer's experience account.

The Employment Security Act is intended, *inter alia*, to provide for payment of benefits to persons unemployed through no fault of their own. IC 1971, 22-4-1-1 (Burns Code Ed.). A person who ultimately receives a retroactive payment of wages receives all which he anticipated; i.e., he is made whole. The benefits are available and are paid at a time and in a manner so as to alleviate the hardship which the employee might otherwise suffer. Certainly it is without prejudice to the employee to require repayment of the benfits once the payment for retroactive wages has been made.

The Employment Security Act has prescribed weekly benefit periods. The items of deductible income listed in IC 1971, 22-4-5-2, *supra*, are balanced against the benefit amount on a weekly basis. In making special provisions for ascertaining allocation of holiday pay and vacation pay, for example, the legislature gives due regard for the need to assign such amounts to specific weekly periods.

Likewise, IC 1971, 22-4-5-2, *supra*, reflects recognition that the Division cannot determine the effect upon weekly benefits without being provided a sufficient allocation of the award made by the NLRB. A statute which prevents imposition of an impossible duty upon the Division should not be construed, however, to prevent the Division from performing a duty which is clearly within its capabilities and which promotes the purposes of the Employment Security Act.

In summary, we hold that those facts and computations provided by the NLRB in fulfillment of its Order are properly deemed to be a part of its Order. We further hold that in regard to an award by the NLRB of back pay, the requirement that an award be allocated to a designated week or

weeks is satisfied when the Order provides sufficient information to reveal to the Division that the claimant has received his wages for the period during which he also received unemployment compensation benefits.[1] This decision is made with due regard for the stated policy of the NLRB to compute back pay in a manner which will make the employee whole, and with due regard for the authority of the Employment Security Division to provide benefits only to those claimants who receive deductible income in an amount less than the amount of payable benefits.

Reversed and remanded to the Review Board for further proceedings not inconsistent with this opinion.

Robertson, C.J. and Lybrook, J. concur.

NOTE—Reported at 370 N.E.2d 1343.

---

1.   Hoosier's Exhibit No. 2, the letter from the Indianapolis office of the NLRB, states willingness to provide full explanation of the NLRB's computation of back pay. Certainly the sagacious employer will seek sufficient explanation to assure that the Division has all information it needs.