Alma E. SMITH, Appellant
(Claimant Below),

v.

REVIEW BOARD OF the INDIANA EMPLOYMENT SECURITY DIVISION, William H. Skinner, David L. Adams and Paul M. Hutson, as members of and as constituting the Review Board of the Indiana Employment Security Division, Appellee,

Ball Brass Foundry, Appellee
(Employer Below).

No. 2-481A140.

Court of Appeals of Indiana,
First District.

Nov. 25, 1981.

Barry A. Macey, Nora L. Macey, Miles, Segal & Macey, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Gordon R. Medlicott, Deputy Atty. Gen., Stephen W.

Lyman, Heath, Bell & Lyman, Indianapolis, for appellee.

ROBERTSON, Judge.

Alma E. Smith appeals the decision of the Review Board of the Indiana Employment Security Division requiring her to repay unemployment benefits. We affirm.

The Review Board determined that Smith had been overpaid unemployment benefits after she received a lump sum settlement for back wages under a National Labor Relations Board agreement. The agreement settled Smith's claim against Ball Brass and Aluminum Foundry, Inc. (Ball Brass), which alleged that she was unlawfully discharged because of her union activities. The agreement provided that Ball Brass would pay Smith $6,900 as a lump sum settlement for backpay. The agreement also provided that Ball Brass foundry would do nothing to interfere with Smith's entitlement to unemployment benefits. By entering the agreement, Smith waived her right to reinstatement. Ball Brass agreed to place notices of the agreement in their plant for sixty days, a usual procedure for such agreements.

Ball Brass notified the Indiana Employment Security Division of the agreement, and of their payment of $6,900 to Smith, in order to have their experience account properly credited.[1] A deputy of the Indiana Employment Security Division (Division) issued a "Determination of Eligibility" and found that Smith received benefits during the period for which she received the backpay award. Therefore, he concluded Smith was overpaid and obligated to repay $2,262.00 in benefits.[2]

Smith appealed this decision and a hearing was held on October 29, 1979. The appeals referee found that Smith was paid unemployment compensation benefits, of $87.00 per week, for the week ending Janu-

---

1. *Ind.Code* 22–4–13–1(d) provides that an employer's experience account will be relieved of benefit charges when an employee has been overpaid unemployment benefits.

2. *Ind.Code* 22–4–13–1(b) provides that an employee must repay benefits to which he is not entitled because of subsequent income payments which are deductible from benefits. Backpay awards under the NLRB's auspices are deductible income.

ary 20, 1979, through the week ending July 14, 1979, a total amount of $2,262.00. This was the maximum benefit available to Smith. The appeals referee found that the lump sum of $6,900.00, which Ball Brass paid to Smith, was payment for backpay and that the language in the NLRB agreement could only refer to the period from January, 1979, to July, 1979. Smith was paid unemployment benefits for twenty-six weeks. The time period from the date of Smith's discharge January 8, 1979, to the date Ball Brass paid her backpay, August 2, 1979, was thirty weeks. The appeals referee allocated the lump sum payment over the thirty week period, an amount of $230.00 per week.

The referee also found that Smith waived her right to reinstatement, essentially in exchange for Ball Brass's agreement to post the notices in their plant pertaining to the agreement. The referee concluded that these promises offset each other. In regard to the NLRB agreement's provision that Ball Brass would not interfere with Smith's right to unemployment benefits, the appeals referee held that the agreement did not bind the Employment Security Division because it is their function, not an employer's function, to determine eligibility. The appeals referee affirmed the deputy's decision and ordered Smith to repay $2,262.00. In turn, the full Review Board heard Smith's appeal of this decision and affirmed it.

■ Smith argues the Division erred in requiring her to repay the benefits because *Ind.Code* 22–4–5–2, which pertains to deductions from unemployment benefits, requires:

[t]hat if such payments made pursuant to the provisions of the National Labor Relations Act [U.S.C., tit. 29, § 141 et seq.] or of the Fair Labor Standards Act or through agreement with a union are not by the terms of the order or agreement under which said payments are made, allocated to any designated week or weeks, then, and in such cases, such payments shall be considered as deductible income in and with respect to the week in which the same is actually paid.

Smith contends the NLRB agreement did not allocate Ball Brass's payment to any particular weeks nor did it contain sufficient information for the Division to make an allocation. She concludes the lump sum payment should only be considered deductible income for the week in which it was paid.

In *Hoosier Wire Die v. Review Bd. of Ind. Emp.*, (1978) Ind.App., 370 N.E.2d 1343, this court construed IC 22–4–5–2, and held that although the unemployment claimant received a lump sum settlement without any specified weekly allocation in the NLRB's order, documents supporting the order provided sufficient information to satisfy the statutory requirement of allocation to designated weeks. The court stated:

In summary, we hold that those facts and computations provided by the NLRB in fulfillment of its Order are properly deemed to be a part of its Order. *We further hold that in regard to an award by the NLRB of backpay, the requirement that an award be allocated to a designated week or weeks is satisfied when the Order provides sufficient information to reveal to the Division that the claimant has received his wages for the period during which he also received unemployment compensation benefits.* This decision is made with due regard for the stated policy of the NLRB to compute backpay in a manner which will make the employee whole, and *with due regard for the authority of the Employment Security Division to provide benefits only to those claimants who receive deductible income in an amount less than the amount of payable benefits.*

370 N.E.2d at 1349. (Emphasis added).

The facts in *Hoosier* differ from those in the case at bar. In *Hoosier*, the NLRB ordered the employer to make the employee whole for any loss of pay and to reinstate the employee if possible. The order explained that backpay was to be determined according to the formula set forth in *F. W. Woolworth Company*, 90 NLRB 289, (1950), and ordered the employer to make its rec-

ords available to the local NLRB office for computation of the award. A letter and computations prepared by the local NLRB office were the documents accompaning the order which specified the amount of backpay and the weeks it covered.

In the case at bar, the employee's backpay was awarded under an agreement rather than an order following adversary proceedings between Ball Brass and Smith. The parties, with participation by an NLRB attorney, computed the amount of backpay and agreed on the amount. Thus, the NLRB agreement simply specifies:

BACK PAY—The Charged Party will make whole the employees named below by payment to each of them of the amount opposite their name.

Alma Smith—$6,900.00

The above backpay figure is a lump sum settlement.

There are no NLRB documents pertaining to the computation of back wages or the period covered by the award. However, Ball Brass introduced similar evidence at the hearing before the Review Board. Smith objected to this evidence on the grounds that IC 22–4–5–2, prohibits the Division from looking beyond the agreement. Smith did not challenge the accuracy of this evidence.

The evidence reveals the history of negotiations between the parties and makes it clear the settlement was intended to compensate Smith for lost wages between the date she was discharged and the settlement date.

Even without this evidence, the NLRB agreement provides enough information to indicate to the Division that the lump sum settlement was intended to make Smith whole for the period she was unemployed. The agreement refers to the settlement as "backpay", it clearly indicates the parties' relationship and the fact that their labor dispute was related to Smith receiving unemployment compensation; hence the trade off whereby Smith withdrew her complaint and Ball Brass withdrew their appeal to the Division.

The fact that the Division had the records indicating the dates which the settlement covered is immaterial. The settlement agreement reveals Smith received wages for the period during which she received unemployment benefits. The settlement amount exceeded the maximum amount of her benefits and therefore, she was not entitled to the benefits. This situation was succinctly described in *Hoosier*:

The Employment Security Act is intended, inter alia, to provide for payment of benefits to persons unemployed through no fault of their own. *A person who ultimately receives a retroactive payment of wages receives all which he anticipated; i. e., he is made whole.* The benefits are available and are paid at a time and in a manner so as to alleviate the hardship which the employee might otherwise suffer. Certainly it is without prejudice to the employee to require repayment of the benefits once the payment for retroactive wages has been made.

370 N.E.2d at 1349. (Emphasis added). (Citations omitted).

Therefore, Smith's assertion that the Division's decision violates the policies expressed by the Indiana Employment Security Act and the National Labor Relations Act, 29 U.S.C.A. § 151 *et seq.*, fails. If Smith was not adequately compensated by the settlement agreement, the issue should have been resolved by Ball Brass's and Smith's attorneys. In relation to the Indiana Employment Security Act, Smith received more in the settlement than she was entitled to as unemployment benefits and therefore, in so far as the Act is concerned, Smith received all money to which she was entitled.

■ Likewise, Smith's assertion that Ball Brass violated the settlement agreement by having their experience account properly credited fails. Of course, we are not adjudicating whether the parties adhered to the agreement, but it is clear that private parties may not usurp the Division's function and determine among themselves a claimant's eligibility for benefits. *See Siddiqi v.*

*Review Bd. of Ind. Emp. Sec. Div.*, (1979) Ind.App., 388 N.E.2d 613.

Judgment affirmed.

NEAL, P. J., and RATLIFF, J., concur.