Roger BETTCHER; Richard Metcalf; and Ernest Roybal, Appellants (Petitioners),

v.

WYOMING DEPARTMENT OF EMPLOYMENT, Appellee (Respondent).

No. 93–120.

Supreme Court of Wyoming.

Nov. 9, 1994.

Hardy H. Tate of Tate & Wilson, Sheridan, and Robert M. Weaver of Longshore, Nakamura & Quinn, Birmingham, AL, representing appellants.

Joseph B. Meyer, Atty. Gen., Cheyenne, and Joe Scott, Sr. Asst. Atty. Gen., Casper, representing appellee.

Before GOLDEN, C.J., and THOMAS, CARDINE,* MACY,** and TAYLOR, JJ.

TAYLOR, Justice.

In this consolidated appeal of contested case proceedings before an administrative agency, three claimants seek to reverse decisions of the Unemployment Insurance Commission of the Wyoming Department of Employment (Commission). The Commission determined that the claimants were ineligible or disqualified during some periods when unemployment benefits were received. The Commission found the claimants had each received money characterized as "back pay," and in one case a "severance payment," as a result of a negotiated settlement with an employer. The Commission ruled it could recover the amounts of overpaid unemployment benefits from the claimants. The claimants contend substantial evidence does not support the Commission's decisions in all three cases and assert that a recent decision of this court directs a contrary result in one case.

We affirm.

---

* Retired July 6, 1994.

** Chief Justice at time of conference.

## I. ISSUES

Appellants, the claimants, state one issue:

Is there substantial evidence to support the conclusion of the Unemployment Insurance Commission, Wyoming Department of Employment, that the Appellants received disqualifying income, disqualifying them from receiving unemployment compensation benefits?

Appellee, the Wyoming Department of Employment, identifies two issues:

### A.

Whether the Commission's decisions that claimants received backpay [sic] and were therefore ineligible for unemployment benefits are supported by substantial evidence and are in conformity with law?

### B.

Whether the Commission's decision that Metcalf received severance pay and is therefore disqualified from unemployment benefits is supported by substantial evidence and is in conformity with law.

## II. FACTS

On October 1, 1987, Roger Bettcher (Bettcher), Ernest Roybal (Roybal), and Richard Metcalf (Metcalf) (collectively claimants) joined a strike called by the United Mine Workers of America (UMWA) against their employer, Decker Coal Company (Decker) of Big Horn County, Montana. After extensive proceedings before the National Labor Relations Board (NLRB), the NLRB ruled that Decker engaged in unfair labor practices prior to the strike. The NLRB upheld a finding of an administrative law judge that Decker must "make whole employees for any lost wages or benefits" incurred as a result of the unilateral changes Decker made in the employees' terms of employment after the strike began.

On June 27, 1988, the UMWA made an unconditional offer to return to work, effectively ending the strike; however, Decker did not allow the workers who had participated in the strike to return to the mine. Finally, on September 30, 1991, the UMWA and Decker reached a negotiated settlement. The terms of the settlement agreement provided: "All strikers except those noted below, shall be entitled to $35,000 in backpay [sic], less tax withholdings, for the period of time since their June 27, 1988 unconditional offer to return to work until reinstatement."

The settlement agreement classified the workers who had participated in the strike into several categories. The material categories included: (1) the strikers who were legally entitled to be reinstated to their former positions would be reinstated by Decker and would receive $35,000.00 in "back pay" (Roybal); (2) the strikers who were legally entitled to be reinstated to their former positions but not reinstated by Decker would receive $100,000.00 in "back pay" and a "severance payment" (Metcalf); and (3) the strikers who were not legally entitled to be reinstated to their former positions would receive $35,000.00 in "back pay" (Bettcher). The settlement agreement included specific mathematical formulas to calculate the amount of "back pay" or the amount of "back pay" and a "severance payment" for each category.

The claimants each signed a waiver and release agreement to receive a lump-sum payment. The waiver and release agreement signed by Bettcher and Roybal stated, in pertinent part:

> I, [claimant's name], in full and final settlement of all **backpay** [sic] and any other rights or remedies which I might have with or against DECKER COAL COMPANY * * * agree to accept Thirty-Five Thousand Dollars ($35,000.00), less applicable state and federal withholding taxes.

(Emphasis added.) The waiver and release agreement signed by Metcalf stated, in pertinent part:

> I, Richard R. Metcalf, hereby elect to receive a lump sum **severance payment** of One Hundred Thousand Dollars ($100,-000.00), less applicable state and federal withholding taxes, in lieu of any rights to employment, reinstatement, backpay [sic], or any other rights or remedies which I

might have with or against DECKER COAL COMPANY * * *.

(Emphasis added.)

Between June of 1988 when the strike effectively ended and September of 1991 when the UMWA and Decker settled their disputes, the claimants worked sporadically for other employers in Wyoming. When those positions terminated, the claimants applied for and received unemployment benefits from the Wyoming Department of Employment, Unemployment Insurance Division (Division). The claimants properly applied for the unemployment benefits and the Division distributed them in accord with its guidelines.

After the settlement, the Division determined that the $35,000.00 payments received by all three claimants from Decker constituted "back pay," and the additional $65,000.00 received by Metcalf constituted a "severance payment." Notices were sent to each claimant announcing the Division's determinations. The notices declared that as a result of the "back pay" and settlements, the claimants were not eligible for some of the unemployment benefits they had received. The claimants filed administrative appeals.

On January 9, 1992, a hearing was held before an appeals examiner. The appeals examiner issued individual decisions. The appeals examiner found that the claimants received either "back pay" or "back pay" and a "severance payment", and as a result, they were not eligible to receive some unemployment benefits. The appeals examiner determined that the Division could recover any overpaid unemployment benefits from the claimants.

On March 17, 1992, the Commission considered the claimants' administrative appeals. The Commission noted that Bettcher and Roybal had argued that the $35,000.00 payments were settlements for the release of their rights to pursue other remedies against Decker. However, the Commission found that the plain language of the UMWA settlement agreement with Decker called for an award of "back pay." The Commission ruled Bettcher and Roybal were not eligible to receive unemployment benefits for a three-year period from June 27, 1988 to June 26,

1991. Any unemployment benefits Bettcher and Roybal received during this time were recoverable according to the Commission.

The Commission determined that Metcalf had received $35,000.00 in "back pay" and a $65,000.00 "severance payment." As a result of the $65,000.00 "severance payment," Metcalf was disqualified from receiving unemployment benefits from July 3, 1988 to July 8, 1990. The Commission ruled that any unemployment benefits Metcalf received during this time were recoverable.

On April 13, 1992, after exhausting administrative appeals, the claimants filed a consolidated appeal in district court. The district court determined that substantial evidence supported the Commission's rulings and affirmed. This appeal followed.

## III. DISCUSSION

Jurisdiction for an appeal of this administrative action is provided by Wyo.Stat. § 27–3–407 (1991) which permits a person adversely affected by a final decision of the Commission to obtain judicial review. *Casper Iron & Metal, Inc. v. Unemployment Ins. Com'n of Dept. of Employment of State of Wyo.*, 845 P.2d 387, 391 (Wyo.1993). *See Brandt v. TCI Cablevision of Wyoming*, 873 P.2d 595, 597 (Wyo.1994).

■ Under the Wyoming Administrative Procedure Act, Wyo.Stat. §§ 16–3–101 through 16–3–115 (1990 & Cum.Supp.1994), the scope of review of a contested case proceeding is limited:

(c) To the extent necessary to make a decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. In making the following determinations, the court shall review the whole record or those parts of it cited by a party and due account shall be taken of the rule of prejudicial error. The reviewing court shall:

(i) Compel agency action unlawfully withheld or unreasonably delayed; and

(ii) Hold unlawful and set aside agency action, findings and conclusions found to be:

\*   \*   \*   \*   \*   \*

(E) *Unsupported by substantial evidence in a case reviewed on the record of an agency hearing provided by statute.*

Wyo.Stat. § 16–3–114(c) (emphasis added). In our review of the Commission's decision, we accord no special deference to the district court's decision. *Employment Sec. Com'n of Wyoming v. Western Gas Processors, Ltd.,* 786 P.2d 866, 870 (Wyo.1990) (*quoting Southwest Wyoming Rehabilitation Center v. Employment Sec. Com'n of Wyoming,* 781 P.2d 918, 920 (Wyo.1989)).

■ "Our review of contested case orders focuses on the evidence and considers the reasonableness of the agency's exercise of judgment while determining if errors of law were committed or whether any constitutional rights were violated." *Casper Iron & Metal, Inc.,* 845 P.2d at 392. The presence in the record of substantial evidence supporting the findings of the agency precludes this court from substituting its judgment for that of the agency. *World Mart, Inc. v. Ditsch,* 855 P.2d 1228, 1232 (Wyo.1993). Substantial evidence has been defined " 'as such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *Parker Land and Cattle Co. v. Wyoming Game and Fish Com'n,* 845 P.2d 1040, 1066 (Wyo. 1993) (*quoting Mountain Fuel Supply Co. v. Public Service Com'n of Wyoming,* 662 P.2d 878, 882 (Wyo.1983)). Substantial evidence is more than a mere scintilla of evidence. *Trout v. Wyoming Oil and Gas Conservation Com'n,* 721 P.2d 1047, 1050 (Wyo.1986).

The claimed imprecise use of the English language provides the central dispute in these contested cases. The thesis of the debate with which we are presented is that words that once had precise meanings have been corrupted into mere synonyms or ambiguity by the infirmity of their use. As a result, we are challenged to find contrary intent in language which emphasizes these terms. Since we view the language used in the relevant agreements and statutes to be a definite expression of the intent of the draft-

ers, we determine that there is no cause for relief from the Commission's decisions.

The central terms at issue are "back pay" and "severance payment." The claimants argue we must look at the substance of the payments intended by the UMWA and Decker rather than the form of the language used to facilitate the delivery of the money. If this is done, the claimants contend we will hold that Bettcher, Roybal and Metcalf received settlements in lieu of "back pay" or "severance payments."

**A. Substantial Evidence of "Back Pay"**

Bettcher and Roybal each received $35,-000.00 from Decker. The claimants dispute the Commission's findings that these payments constituted "back pay." As the claimants view the intent of the parties, the term "back pay" was used as a "label" without specificity in the settlement agreement and the waiver and release agreements. We disagree.

Our inquiry considers whether substantial evidence supports the findings of the Commission that Bettcher and Roybal received "back pay." We must also determine if "back pay" constitutes a "wage" under the Wyoming Employment Security Law, Wyo. Stat. §§ 27–3–101 through 27–3–704 (1991 & Cum.Supp.1994) (hereinafter WESA). If the claimants received a "wage" in the form of "back pay" from Decker, they were not eligible to receive unemployment benefits for that period.

■ There is substantial evidence in the record to support the Commission's findings that Bettcher and Roybal received "back pay." The NLRB ordered Decker to "make whole" the employees for lost wages or benefits. As a result of that order, Decker and the UMWA conducted lengthy negotiations to reach a settlement which was subject to NLRB approval and procedural guidelines.

Under the heading, "Backpay [sic] And Other Payments," the settlement agreement between the UMWA and Decker detailed individual methods of calculating "back pay" for the specific categories that included the claimants. The waiver and release agree-

ments signed by Bettcher and Roybal also referred to accepting an amount of money for a "full and final settlement of all backpay [sic] and any other rights or remedies" against Decker. The waiver and release agreements included a provision making them subject to the terms of the settlement agreement. We hold the terms of the settlement agreement and the waiver and release agreements state a definite intent of the parties to provide the claimants with an award of "back pay."

■ To be eligible for unemployment benefits, a claimant must meet several criteria, including: registering for work; actively seeking work; and being unemployed. Wyo. Stat. § 27–3–306(a). The WESA defines when a claimant is unemployed:

"Unemployment" means any week in which an individual performs no services and receives no wages or performs less than full-time work if wages payable for that week are less then his weekly benefit amount and are in accordance with regulations of the commission[.]

Wyo.Stat. § 27–3–102(a)(xv). A "wage" is "remuneration payable for services from any source including commissions, bonuses and cash." Wyo.Stat. § 27–3–102(a)(xviii).

Under the Social Security Act, the United States Supreme Court considered whether "back pay" is a "wage." *Social Security Board v. Nierotko,* 327 U.S. 358, 364–65, 66 S.Ct. 637, 640–41, 90 L.Ed. 718 (1946). The United States Supreme Court held that an employee who receives "back pay" for a period of time during which the employee was wrongly separated from his or her employment has received a "wage." *Id.* at 364, 66 S.Ct. at 641. A "wage" was defined as "remuneration for employment" and "employment" was defined as "any service * * * performed * * * by an employee for his employer * * *." *Id.* The United States Supreme Court determined that "back pay" was a form of "remuneration" and, therefore, a "wage." *Id.*

Most state courts have agreed that "back pay" should be treated as a "wage" for purposes of administering state unemployment benefits. In *Griggs v. Sands,* 526 S.W.2d 441, 445 (Tenn.1975) (collecting cases), the

Supreme Court of Tennessee examined various federal and state decisions and determined that "back pay" is a "wage."

It thus appears from our examination of the authorities that the Courts which have examined the question have uniformly with the exception of the Maryland case [*Waters v. State,* 220 Md. 337, 152 A.2d 811 (1959) ], found that an award of back pay is equivalent, both in theory and in fact, to wages earned by an employee, and that upon receipt thereof, the employee is ineligible for unemployment compensation benefits and may be made to account for them, either by reimbursement or by disallowance of future benefits.

*Griggs,* 526 S.W.2d at 447–48. The *Griggs* court held that employees receiving an arbitration award of "back pay" were not eligible for unemployment benefits and the Tennessee Unemployment Insurance Commission was entitled to recover any overpayment. *Id.* at 448–49.

The court in *Arizona Dept. of Economic Sec. v. Lidback,* 26 Ariz.App. 143, 546 P.2d 1152, 1153 (1976), considered whether a judgment resulted in an award of "back pay." The employee claimed he was not paid "wages" and was, therefore, eligible for unemployment benefits. *Id.* 546 P.2d at 1153. The court disagreed. "Regardless of the nomenclature applied to the judgment of the district court, it did, in fact, reimburse [the employee] for all wages he would have received had he not been wrongfully discharged from the postal service." *Id.* 546 P.2d at 1154. Therefore, the court held the "back pay" made the employee ineligible for unemployment benefits and the agency was entitled to recover any overpayment. *Id.*

The court in *Smith v. Review Bd. of Indiana Employment Sec. Division,* 428 N.E.2d 88, 89 (Ind.App.1981) considered whether a payment required by a negotiated settlement constituted "back pay." The settlement disposed of the employee's wrongful discharge claims against her employer. *Id.* The court determined that the language of the settlement characterized the lump-sum payment the employee received as "back pay." *Id.* at 91. The court held the employ-

ee had received "wages" in the form of "back pay" during the period when she was receiving unemployment benefits. Therefore, the Employment Security Division of Indiana was entitled to recover any overpayment. *Id.*

The definition of "wage" in the WESA is substantially similar to the definitions of "wage" and "employment" in *Nierotko*, 327 U.S. at 364, 66 S.Ct. at 641. We agree, therefore, that "back pay" should be considered a "wage." We hold that for purposes of the WESA, an employee receiving "back pay" as a result of an NLRB award, a judgment, an arbitration proceeding or a negotiated settlement following a period of separation from his or her employment has received a "wage." *Lidback*, 546 P.2d at 1154; *Smith*, 428 N.E.2d at 91; *Griggs*, 526 S.W.2d at 447–48.

The claimants attempt to distinguish *Griggs* and other authorities by arguing that if the intent of a "back pay" award is to "make whole" the employee, then the claimants could not have received "back pay." The claimants point to their average hourly earnings and note that the amount of "back pay" they received was far less than their expected pay over the period of time they were off the job. The claimants misconstrue the limits of "make whole" relief.

"Back pay" is not a fine or penalty; rather, "back pay" is provided to protect the employee and redress grievances to make the employee "whole." *Nierotko*, 327 U.S. at 364–65, 66 S.Ct. at 641. However, "make whole" relief does not mean an employee is awarded "back pay" in an amount equal to what the employee would have earned. *Id.* at 365, 66 S.Ct. at 641.

> [T]he term "[b]ack pay refers to the amount that [an employee] would have earned but for the employer's unlawful conduct, *minus the amount that [the employee] did earn or could have earned if he or she had mitigated the loss by seeking or securing other comparable employment.* Back pay includes * * * fringe benefits (such as medical insurance), and all other compensation that would have been obtained but for the [unlawful conduct]."

*Lowe v. California Resources Agency*, 1 Cal. App.4th 1140, 2 Cal.Rptr.2d 558, 560 n. 3 (1991) (*quoting* 3 M. Kirby Wilcox et al., *Cal.Employment Law, EEO Civil Actions, State Law*, § 43.01[8][b] (1991)). In a theoretical model, "back pay" acknowledges the restitution by the employer of the constructive "wages" which the employee was entitled to receive as a result of a continued legal status of employment. *In Re Gurda Farms, Inc.*, 15 B.R. 868, 874–75 (D.C.N.Y.1981).

The court in *Smith*, 428 N.E.2d at 91 considered a settlement with a "make whole" provision. The court determined that it was clear the settlement was intended to compensate the employee with "back pay" from the date she was discharged to the date of the settlement. *Id.* The court held that since the employee had received "wages" in the form of "back pay" which exceeded the maximum amount of her unemployment benefits, the "back pay" provided "make whole" relief and she was not entitled to the benefits. *Id.* The court noted that if the employee was "not adequately compensated" by the settlement, the dispute should have been resolved by the parties to the settlement. *Id.*

The claimants' "back pay" was awarded under terms of the settlement agreement. While the methods of calculating the "back pay" resulted in a uniform payment of $35,000.00, the calculations involved different "back pay" periods ranging from two to three years, a deduction for an amount of interim earnings, and a different multiplying factor. The settlement agreement explained:

> A. * * * The backpay [sic] amount takes into account a set amount for interim earnings. Although the amount is the same for discharged strikers and previously reinstated strikers, the negotiated backpay [sic] figure takes into consideration the risk of the discharged strikers not winning before the NLRB.
>
>     *     *     *     *     *     *
>
> Furthermore, backpay [sic] is in addition to any other payments which eligible employees may select below.

The Commission found that Bettcher and Roybal had received $35,000.00 in "back pay." The Commission found this amount

resulted in a weekly "wage" payment to Bettcher and Roybal of $224.35 over a three-year period. Wyo.Stat. § 27–3–102(a)(xv). This amount exceeded the weekly amount of unemployment benefits which Bettcher and Roybal were entitled to receive during this same period. Therefore, Bettcher and Roybal were made "whole" insofar as the WESA is concerned because they received more in the settlement agreement than they were entitled to receive as unemployment benefits. *Smith,* 428 N.E.2d at 91.

The Commission's decisions that Bettcher and Roybal were not eligible to receive unemployment benefits from June 27, 1988 to June 26, 1991 are supported by substantial evidence.

### B. Substantial Evidence of a "Severance Payment"

The claimants contend that substantial evidence does not support the Commission's finding that Metcalf received a $65,000.00 "severance payment." Furthermore, the claimants argue that a recent decision of this court prevents the Commission from disqualifying Metcalf from his entitlement to unemployment benefits. We disagree.

■ There is substantial evidence in the record to support the Commission's finding that Metcalf received a "severance payment" of $65,000.00. Under the heading, "Certain Former Strikers Entitled to Pursue NLRB Case Or Alternative Severance/Backpay [sic] In Lieu of Reinstatement," the settlement agreement explained that the UMWA and Decker could not reach agreement on the reinstatement of certain individuals who participated in the strike. As a result, the parties provided that those individuals, including Metcalf, could pursue their pending cases before the NLRB or "voluntarily elect to receive from [Decker] a lump sum *severance/backpay* [sic] payment" of $100,000.00. (Emphasis added.) According to the terms of the settlement agreement, all eligible participants in the strike received $35,000.00 in "back pay." By deducting this amount of "back pay" from the total payment Metcalf received, the Commission properly determined that Metcalf received $65,000.00 in the form of a "severance payment."

The waiver and release agreement Metcalf signed also referred to accepting a "severance payment." In return for this payment, Metcalf agreed to dismiss all claims against Decker. We hold the terms of the settlement agreement and the waiver and release agreements stated a definite intent of the parties to provide Metcalf with a "severance payment" of $65,000.00.

■ Next, we address a question of law involving the statutory interpretation of a "severance payment" and the grounds for disqualification from an entitlement to unemployment benefits under the WESA. The claimants contend that Metcalf should not be disqualified because a "severance payment" is distinguished from "remuneration" in Wyoming. The claimants rely on a recent decision of this court involving a different statutory scheme.

Any question of statutory interpretation is a question of law. *Parker Land and Cattle Co.,* 845 P.2d at 1042. " 'Our standard of review for any conclusion of law is straightforward. If the conclusion of law is in accordance with law, it is affirmed, [*Dep't. of Rev. & Tax. v. Casper Legion Baseball Club, Inc.,* 767 P.2d 608 (Wyo.1989) ]; if it is not, it is to be corrected, [*Rocky Mountain Oil & Gas Ass'n. v. State Bd. of Equalization,* 749 P.2d 221 (Wyo.1987) ].' " *Parker Land and Cattle Co.,* 845 P.2d at 1042 (*quoting Western Gas Processors, Ltd.,* 786 P.2d at 871).

"When interpreting statutes, we follow an established set of guidelines. First, we determine if the statute is ambiguous or unambiguous." *Moncrief v. Wyoming State Bd. of Equalization,* 856 P.2d 440, 443 (Wyo.1993). A "statute is unambiguous if its wording is such that reasonable persons are able to agree as to its meaning with consistency and predictability." *Allied–Signal, Inc. v. Wyoming State Bd. of Equalization,* 813 P.2d 214, 220 (Wyo.1991). Unless another meaning is clearly intended, "[w]ords and phrases shall be taken in their ordinary and usual sense * * *." Wyo.Stat. § 8–1–103(a)(i) (1989). *See DiVenere v. University of Wyoming,* 811 P.2d 273, 275 (Wyo.1991). Conversely, "a statute is ambiguous only if it is found to be vague or uncertain and subject to

varying interpretations." *Allied–Signal, Inc.*, 813 P.2d at 219–20.

The WESA defines several grounds for disqualification from an entitlement to unemployment benefits:

(a) For any week with respect to which the following situations occur or payments have been or will be received, an individual shall be disqualified from benefit entitlement if:

\* \* \* \* \* \*

(ii) *Remuneration is received as severance payments,* termination allowances, sick pay or for earning vacation.

Wyo.Stat. § 27–3–313(a) (emphasis added). The WESA does not define the terms "remuneration" or "severance payments."

The claimants argue that the definitions supplied by this court for "remuneration" and "severance pay" in *Mowry v. State ex rel. Wyoming Retirement Bd.*, 866 P.2d 729, 731 (Wyo.1993) direct a reversal of the Commission's decision regarding Metcalf's benefits. Applying *Mowry*, the claimants argue Metcalf was eligible to receive unemployment benefits. According to the logic advanced by the claimants, if the $65,000.00 payment Metcalf received was a "severance payment," then he did not receive any disqualifying "remuneration" under the WESA because these two terms are exclusive. We do not agree with the construction the claimants present for Wyo.Stat. § 27–3–313(a).

In *Mowry*, a question arose as to whether a former state employee was entitled to include amounts received as "severance pay" in calculations for retirement benefits. The former state employee asked whether the contractually obligated "severance pay" he received was a part of the "average salary" figure used to calculate his benefits under the Wyoming Retirement Act, Wyo.Stat. §§ 9–3–401 through 9–3–620 (1991 & Cum. Supp.1994) (hereinafter Retirement Act). *Mowry*, 866 P.2d at 730. The Retirement Act defines "salary" as "the cash remuneration paid to [an employee] in a calendar year \* \* \*." Wyo.Stat. § 9–3–402(a)(xvi).

In *Mowry*, 866 P.2d at 731, this court examined various definitions of "remuneration" to determine if, in its ordinary meaning,

"remuneration" included "severance pay." The term "remuneration" was defined as " '[r]eward; recompense; salary; compensation.' " *Id.* at 731 (*quoting* Black's Law Dictionary 1165 (5th ed. 1979)). We concluded that the ordinary meaning of the term "remuneration" "clearly contemplates payments made in return for something equivalent." *Mowry*, 866 P.2d at 731. The term "severance pay" referred to a " '[p]ayment by an employer to employee beyond his wages on termination of his employment.' " *Id.* (*quoting* Black's Law Dictionary 1232 (5th ed. 1979)). Our review of various definitions of "severance pay" lead to a conclusion that it is "primarily gratuitous and, although it may be intended to partially alleviate the loss of employment, it is not an attempt to equally compensate the employee for services rendered, losses suffered, or expenses incurred." *Mowry*, 866 P.2d at 731. We held, based on the plain and ordinary meanings of the terms, the "severance pay" the former state employee received was not "remuneration" and, therefore, the "severance pay" was not part of the "salary" figure used to calculate Retirement Act benefits. *Id.*

The result the claimants seek under the WESA is not dictated by our decision in *Mowry*. Unlike Wyo.Stat. § 27–3–313(a)(ii), the statute at issue in *Mowry* does not refer specifically to "severance payments." The Retirement Act definition of "salary" was exclusive to "cash remuneration." Wyo.Stat. § 9–3–402(a)(xvi). "Severance payments," therefore, were not associated with "salary" under the plain meaning of the statute. *Mowry*, 866 P.2d at 731.

The unambiguous language of the WESA reflects a legislative intent to state a conjoint definition of conditions which provide grounds for disqualification from an entitlement to unemployment benefits. Wyo.Stat. § 27–3–313(a)(ii) provides for disqualification when: "Remuneration is received as severance payments \* \* \*." The legislature understood that the ordinary meaning of "remuneration" may not include "severance payments." However, by specifically associating "remuneration" with "severance payments," we hold the legislature has expressed its intent to require an individual be disqualified

from receiving unemployment benefits when an employer makes a "severance payment."

The Commission found that Metcalf had received a $65,000.00 "severance payment." Applying Division regulations, the Commission determined that Metcalf's "severance payment" equalled his average weekly rate of pay at Decker for a total of 106 weeks. Therefore, Metcalf was disqualified from receiving unemployment benefits for a corresponding period of time. Wyo.Stat. § 27–3–313(a).

The Commission's decision that Metcalf was disqualified from receiving unemployment benefits from July 3, 1988 to July 8, 1990 is supported by substantial evidence.

## IV. CONCLUSION

The WESA is intended to provide for the payment of benefits to persons who are unemployed through no fault of their own. Ultimately, the claimants received payments from Decker. The "back pay" was a form of a "wage" which made Bettcher and Roybal ineligible for unemployment benefits for a period of time. The "severance payment" disqualified Metcalf from receiving unemployment benefits for a period of time. The Commission correctly found that these retroactive payments resulted in an overpayment to the claimants of unemployment benefits.

The decision of the district court, which affirmed the Commission's rulings, is affirmed.