**Robert M. GIBSON, Appellant (Petitioner),**

v.

**WYOMING DIVISION OF UNEMPLOYMENT INSURANCE, DEPARTMENT OF EMPLOYMENT, Appellee (Respondent).**

No. 94–307.

Supreme Court of Wyoming.

Dec. 11, 1995.

Robert M. Gibson, pro se.

William U. Hill, Attorney General, Cheyenne, Wyoming; and Joe Scott, Senior Assistant Attorney General, Casper, for appellee.

Before GOLDEN, C.J., and THOMAS, MACY, TAYLOR, and LEHMAN, JJ.

TAYLOR, Justice.

Appellant, a well paid professional, sought and received unemployment benefits while pursuing remedies for termination of his employment. Success in the latter pursuit was marked by reinstatement to his prior position and receipt of full back pay. Appellant, however, feels aggrieved by efforts to recover the unemployment benefits afforded him during the period for which he received back pay and appeals the district court's affirmance of the Unemployment Insurance Commission's decision requiring refund of his unemployment benefits.

We affirm.

## I. ISSUES

In his pro se brief, appellant presents one issue:

Has the State of Wyo. Dept. of Employment taken a position that is against Equity and Good Conscience or Defeats the Purpose of the Act when non-fraud benefits are deemed to be an overpayment subject to recoupment?

Appellee articulates its statement of the issues:

### A

Whether the Commission's decision requiring Gibson to repay the unemployment benefits he received is supported by substantial evidence and in conformity with law?

### B

Whether the Commission's conclusion that whether the original decision disqualifying Gibson and thereby creating the overpayment of benefits was correct is not a relevant factor for it to consider in deciding whether the overpayment should be recovered is in conformity with law?

## II. FACTS

Appellant, Robert M. Gibson (Gibson), worked for the same employer for almost eight years before being terminated in June of 1990. Gibson made application for unemployment benefits to appellee, Wyoming Department of Employment (the Department), was found eligible, and subsequently received $5,000.00 in benefits from July of 1990 through June of 1991.

Gibson also sought administrative relief from the termination. He prevailed, winning reinstatement to his former position, salary adjustments, and "Back Pay" of $55,106.96. His employer notified the Department of Gibson's victory, pointing out that the "back pay settlement" covered the period during which Gibson had received unemployment benefits.

Following informal discussions with Gibson, the Department determined that receipt of back pay rendered him "not unemployed nor eligible for benefits." An ineligibility notice was mailed to Gibson on March 25, 1992, giving him ten days in which to appeal, absent which he would waive his right to contest disqualification. The Department sent Gibson overpayment determinations on March 30, 1992, informing him that he needed to repay the $5,000.00 in unemployment benefits he had received and giving him another ten day response period in which to file a protest and/or request for waiver.

In an envelope postmarked April 7, 1992, Gibson contested both the disqualification and overpayment. His contest of disqualification was denied as not having been timely filed. An administrative appeal of that decision was dismissed, while contest of overpayment was held in abeyance pending final resolution of the disqualification issue. The district court ruled against Gibson on the

timeliness of his efforts to contest the disqualification, remanding the overpayment issue to the Department for hearing. There was no appeal.

Finally, on April 26, 1993, Gibson enjoyed a substantive hearing on the issue of whether overpayment recovery should be waived. Rejecting the plain meaning of relevant regulations of the Unemployment Insurance Commission (Commission), an appeals examiner recommended in Gibson's favor. Under Departmental protest, the Commission vacated the recommendation, remanding the overpayment recovery for another hearing.

Additional evidence was taken on December 3, 1993, at which time Gibson asserted that no one at the Department ever told him that if he was awarded back pay he would have to return his unemployment benefits. Finding him to be without fault, the Department's Chief Appeals Examiner nonetheless found that Gibson's back pay amounted to receipt of wages for the time during which unemployment benefits were received, ruling that Gibson had failed to make his case for a waiver of his repayment obligation. Affirmance by the Commission and the district court set the stage for this appeal.

### III. SCOPE AND STANDARD OF REVIEW

■ Review of the Commission's decision proceeds as if the matter had come directly to us, and we afford no special deference to the district court's determinations. *Wyoming Dept. of Employment, Div. of Unemployment Ins. v. Banks*, 854 P.2d 709, 711 (Wyo.1993). The Wyoming Administrative Procedure Act defines and delimits our authority in review of administrative decision making:

(c) To the extent necessary to make a decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. In making the following determinations, the court shall review the whole record or those parts of it cited by a party and due account shall be taken of the rule of prejudicial error. The reviewing court shall:

(i) Compel agency action unlawfully withheld or unreasonably delayed; and

(ii) Hold unlawful and set aside agency action, findings and conclusions found to be:

(A) Arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law;

(B) Contrary to constitutional right, power, privilege or immunity;

(C) In excess of statutory jurisdiction, authority or limitations or lacking statutory right;

(D) Without observance of procedure required by law; or

(E) Unsupported by substantial evidence in a case reviewed on the record of an agency hearing provided by statute.

Wyo.Stat. § 16–3–114(c) (1990).

■ We focus " 'on the evidence and consider[ ] the reasonableness of the agency's exercise of judgment while determining if errors of law were committed[.]' " *Bettcher v. Wyoming Dept. of Employment*, 884 P.2d 635, 639 (Wyo.1994) (*quoting Casper Iron & Metal, Inc. v. Unemployment Ins. Com'n of Dept. of Employment of State of Wyo.*, 845 P.2d 387, 392 (Wyo.1993)).

■ The primary issue here is the Division's refusal to waive the requirement that Gibson repay overpayments made to him during the period for which his back pay disqualified him for unemployment benefits. The contestant, Gibson, bears the burden of proof in establishing grounds for such a waiver. *Banks*, 854 P.2d at 712.

### IV. DISCUSSION

A. PRELIMINARY MATTERS

■ Without appealing the district court's earlier affirmance on disqualification, Gibson alleges parsimony on the Division's part for not disregarding a "one day postmark" late filing. The Division did not err in enforcing the mandatory ten day fuse from date of *notice* of disqualification to date of *filing* of appeal. Wyo.Stat. § 27–3–402(e) (1991);

*Fullmer v. Wyoming Employment Sec. Com'n,* 858 P.2d 1122, 1123–24 (Wyo.1993).

Had Gibson benefitted from the later enacted fifteen day notice provided in Wyo. Stat. § 27–3–402(e) (Cum.Supp.1995), disqualification would not have been set aside. *Bettcher* supports the notion that receipt of $55,106.96 in back pay equals receipt of wages which, in turn, should disqualify one from receiving unemployment benefits for the time period in question. *Bettcher,* 884 P.2d at 640–42.

 Gibson contends, however, that the Division's premature overpayment decision amounted to dirty work at the crossroads [1] sufficient to deprive him of his due process rights and requires reversal of the Division's refusal to waive repayment. This argument is not without its appeal: the March 25, 1992 disqualification notice states on its face that "[t]his action will be considered final unless you file an appeal within ten (10) days of this notice[,]" meaning that the overpayment notices dated March 30, 1992 were at least inchoate, if not void, *ab initio.* Without much choice, the Department confesses the error of its premature ways, taking refuge in Gibson's failure to demonstrate prejudice.

There is superficial symmetry in the proposition that Gibson's foreclosure on the disqualification issue (for being three days tardy) is countervailed by foreclosing the Department's overpayment notices (for being five days early). However, the overpayment notices were voidable rather than void. *See State ex rel. Yohe v. District Court of Eighth Jud. Dist. in and for Natrona County,* 33 Wyo. 281, 310–13, 238 P. 545, 556–57 (1925). The Division acted in conformity with its authority to determine overpayment, erring only factually as to the finality of the disqualification.

Had Gibson filed an appeal of either action prior to the time disqualification became final, the Department might have lost jurisdiction. *See Northern Utilities, Inc. v. Public Service Commission,* 617 P.2d 1079, 1084 (Wyo.1980). As it was, the Department act-

ed within the limits of its jurisdiction, holding the overpayment issue in abeyance until such time as disqualification was finally resolved, thus addressing due process considerations of fairness. *Jackson v. State ex rel. Wyoming Workers' Compensation Div.,* 786 P.2d 874, 878 (Wyo.1990). In the presence of jurisdiction and the absence of prejudice, early mailing of the overpayment determination was harmless error. *Roberts v. Employment Sec. Com'n of Wyoming,* 745 P.2d 1355, 1357 (Wyo.1987).

B. THE LAW CONCERNING REPAYMENT UPON DISQUALIFICATION

 Wyo.Stat. § 27–3–409(b)(i) (1991) discusses repayment of benefits to which a claimant is not entitled (recoupment), describing the criteria whereby the Department may waive requirement of such a repayment:

There shall be no recoupment if an individual is without fault in receiving the benefits *and* it defeats the purpose of this act *or* is against equity and good conscience as considered by the department in accordance with regulations of the commission[.]

(Emphasis added.) Gibson feels that absence of fault on his part should be dispositive. The plain meaning of the foregoing passage, however, is that absence of fault must be conjoined with findings that recoupment defeats the purpose of the act *or* is against equity and good conscience according to Commission regulations. *Matter of Voss' Adoption,* 550 P.2d 481, 485 (Wyo.1976).

Agreement that Gibson is without fault in the overpayment leaves the Department to argue that recoupment would "defeat[ ] the purpose of [the Wyoming Employment Security Law] or is against equity and good conscience[.]" Wyo.Stat. § 27–3–409(b)(i). Under authority of the Commission, the following regulation has been promulgated:

Section 2. *Equity and Good Conscience and Defeats the Purpose of the Act Criteria.* In determining whether recovery of an overpayment defeats the purpose of the Employment Security Law or is against

---

**1.** This relatively gentle colloquialism is employed to dampen Gibson's attacks upon "the Machiavellianism of the Division" as "they continue to violate my constitutional rights through this malicious persecution[.]"

equity and good conscience for the purpose of deciding whether the overpayment of benefits shall be waived, the Division shall consider the following criteria:

(a) The extent to which recovery of the overpayment would create an extreme financial hardship on the claimant. Extreme financial hardship as used herein means the claimant would be unable to provide himself or his immediate family with minimal necessities of food, clothing, medicine, and shelter as a result of the Division recovering the overpayment. Extreme and lasting financial hardship shall be extreme as described above and lasting means that the financial hardship may be expected to endure for more than 120 days.

(b) The extent to which an agent of the Division made an error which contributed to causing the overpayment of benefits. * * *

(c) Any other relevant factor, provided the claimant is without fault.

Div. Unemploy. Ins., Dept. of Employ., Rules and Regulations, ch. XXXII, § 2 (1990) (hereinafter Rules); *Fullmer,* 858 P.2d at 1124; *Banks,* 854 P.2d at 712.

A hearing officer chose to disregard the foregoing regulation, actually asserting that "[e]ntitlement to Unemployment Insurance benefits is not dependent, whatsoever, on financial need" and recommending in favor of waiving the requirement that Gibson repay the Department. That hearing officer's little excursion through the looking glass might have been truncated had he availed himself of the legislature's policy declaration that "[e]conomic insecurity due to unemployment is a serious menace to the health, morals and welfare of the people of this state;" and consequent resolution to provide unemployment insurance benefits in order that "the purchasing power [of the unemployed] can be maintained and the serious social consequences of poor relief assistance can be limited[.]" Wyo. Sess. Laws ch. 114, § 2 (1983). Upon the Department's protest, the case was remanded for further evidentiary hearing concerning those unasked questions which the Commission thought should have been "obvious" pursuant to the Rules, ch. XXXII, § 2(a).

Wyo.Stat. § 27–3–409(b) and the Rules, ch. XXXII, § 2, constitute the law upon when the Department may waive overpayment in the absence of fault on the part of a claimant. Upon remand, the Chief Hearing Examiner presided, taking Gibson's testimony that he had the means to repay the overpayment and finding no indices of financial hardship, extreme or otherwise, associated with requiring Gibson to make repayment. Gibson spoke extensively about why he viewed the disqualification as improper, but offered no evidence relevant to the issue of repayment or the criteria presented in Rules, ch. XXXII, § 2.

Extensive findings and conclusions, as adopted by the Commission, manifest a substantial if not irrefutable basis upon which repayment is properly required from Gibson pursuant to law. Gibson presents us with no cogent legal argument as to why the Commission's decision should be set aside.

## V. CONCLUSION

■ Elementary principles of equity and conscience often defy location of precedent although they find repeated confirmation in the lives and affairs of most. Such matters are not wills of the momentary wisp of conventional wisdom so much as immutable staples of common sense. Equity may be a "roguish thing," but Gibson has difficulty claiming inequity when the Department asks him to reimburse $5,000.00 in unemployment benefits out of $55,106.96 of back pay covering the period for which he claims to have been unemployed.

Although Gibson feels aggrieved by what he views as inequitable treatment at the hands of a *system,* it is the *law,* in the form of statute and regulation, which disproves Gibson's claims and establishes the equity and good conscience underlying the Commission's decision.

Affirmed.